STEPHEN O. PURINTON

*vs.*

THE SECURITY LIFE INSURANCE AND ANNUITY COMPANY.

Androscoggin.    Opinion January 5, 1881.

*Principal and Agent.    Contract.    Demurrer.*

Where a sealed instrument is executed by an agent, with authority therefor, and it appears by the whole instrument that it was the intention of the parties to bind the principal, that it should be his deed and not the deed of the agent, it must be regarded as the deed of the principal, though signed by the agent in his own name.

Where two persons, constituting a firm, are made agents, and the power conferred upon them is joint and several, the execution of any instrument within the scope of their authority by one or both would be a valid execution.

Thus, upon an agreement commencing, "This agreement made between Fletcher & Bonney of Boston, Superintendents of New England Agencies for the Security Life Insurance and Annuity Company, of New York, of the first part, and Stephen O. Purinton, of the second part," and ending, "In witness whereof the said parties have set their hands and seals. John W. Fletcher, Supt. N. E. Agen. (seal), Stephen O. Purinton (seal)," everything in the body of the instrument being appropriate to an agreement with the company, and inappropriate to an agreement with the agents of the company, an action may be maintained by Purinton against the company, if the agreement is authorized by the company, for a breach of the covenants of such agreement.

Where the declaration alleges an instrument to be the deed of the defendant, it must be so regarded upon a demurrer to the declaration, if it could be, legally, the deed of the defendant.

ON EXCEPTIONS.

Covenant broken.    The declaration recited the agreement given below, and alleged it to be the deed of the defendant company, and that they had not kept the covenants of the same on their part, in that they had prevented him from acting as agent, from March 1st, 1876, and had not paid him since that time. The defendants filed a demurrer to the declaration which was duly joined and overruled, and the defendants alleged exceptions.

(Agreement).

No. 1. "This agreement, made this first day of December, A. D. 1874, between Fletcher and Bonney, of Boston, Mass.

Superintendents of New England Agencies for the Security Life Insurance and Annuity Company, of New York, of the first part, and Stephen O. Purinton, of Lewiston, Maine, of the second part, witnesseth : That the said parties, in consideration of the mutual covenants and agreements hereinafter mentioned, hereby mutually covenant and agree each with the other, as follows, to wit : The said party of the first part hereby appoints the said party of the second part its General Agent, with authority to do business in the district or territory hereinafter specified.

"It shall be the duty of said party of the second part, to solicit and procure persons to be insured with said Company and to employ agents ; and the said party of the second part accepts said appointment as General Agent, and agrees to use due diligence, and exercise his best skill and energies in advancing the business and promoting the best interests of said Company, and agrees to devote his whole time and attention to said service. The district hereinbefore mentioned shall be as follows : The entire State of Maine, with the privelidge [privilege] of working in the State of New Hampshire.

"The compensation for the services so to be rendered to said Company by said party of the second part is to be one thousand dollars per annum, payable monthly, and the sum of six hundred dollars per annum for expenses of office and traveling, and a commission upon the premiums which shall be paid to, and received by said Company on all policies of insurance effected with said Company by or through the procurement of said party of the second part ; which said commission shall be at and after the following, viz : five per cent. upon the first annual premium on life and endowment policies, and five per cent. on the annual renewals of the same, collected by the said party of the second part under this contract. And five per cent. on renewals of all business now existing in the State of Maine. And the said party of the first part agrees to advance to said party of the second part, the sum of eighty-four dollars monthly, and fifty dollars monthly for office and traveling expenses, which advances shall be in full payment of such service with five per cent. commissions as stated above. It is also understood and agreed that the said

party of the second part shall keep regular and accurate statements of all his transactions for account of said Company, and that all monies he may or shall receive for premiums as aforesaid, and all other monies paid to and received by him while or as the agent of said Company in any transaction in which said Company shall be interested, shall be so received and held as a fiduciary trust for said Company, to whom the same shall be forthwith accounted for, and paid to over as soon as collected, and in no case shall the same be considered as payment for services or disbursements, or be appropriated by, or used for the personal convenience, accommodation or benefit of said party of the second part. And the said party of the second part, shall, on the first day of each and every month, (and whenever required by said Company, or by its General Agent for said territory), transmit to said Company or General Agent a report, in detail, embracing every item of business done by or through him, and of all monies collected or received by or through him for said Company, and remit the ascertained balance due to said Company, to its branch office in the city of Boston, Mass. No. 22 School Street. It is also understood and agreed that this contract, or any commission or compensations arising therefrom, shall not be assignable without the written consent of the said Company.

"Also, that said Company reserves the right after a reasonable time, to supply with agents any unoccupied portion of the above-named territory. Said Company will furnish at its own expense, to said party of the second part, all such publications of said Company, comprising blanks, circulars, and other printed matter, as may be requisite for the due prosecution of the business of said Agency, and also pay all necessary expenses for medical examinations, postage and expressage; but no other expenses, unless specially authorized in writing, shall be chargeable to, or paid by said Company. And said party of the second part agrees to comply with and adhere to all the published instructions, rules and conditions of said Company, and such special written or printed instructions, as may from time to time be communicated to him by said Company.

"It is also understood and agreed that this contract is made for the term of five years from date.

"Also, the party of the first allows the party of the second part the same contract to employ agents as he has used since May 1st, 1874.

"In witness whereof the said parties have hereunto set their hands and seals, the day and year first above written.

John W. Fletcher, Sup't N. E. Agen. [L. s.]

Witness, C. L. Holt.

Stephen O. Purinton. [L. s.]"

L. H. Hutchinson, to S. O. P."

*Hutchinson, Savage and Sanborn*, for the plaintiff, cited: R. S., c. 73, § 15; c. 1, § 4, rule 21; *Porter* v. *Androscoggin and Kennebec Railroad Co.* 37 Maine, 349; *Chipman* v. *Foster*, 119 Mass. 189; and *Tucker Manf'g Co.* v. *Fairbanks*, 98 Mass. 102; *Metcalf* v. *Taylor*, 36 Maine, 28; *Chapman* v. *Seccomb*, 36 Maine, 102.

*Wm. P. Frye, John B. Cotton* and *Wallace H. White*, for the defendants.

The contract declared on was not in law or in fact the contract of the company. It is a well settled rule of the common law that an authority to bind a principal by a contract under seal can only be executed in the name of the principal by the hand of the authorized agent. 7 Mass. 19; 16 Mass. 42; 1 Maine, 231; 4 N. H. 102; 11 Maine, 269; 2 Cush. 337; 5 Pet. 319; 8 Pet. 165.

Revised Statutes, c. 73, § 15 adopts this common law rule and provides another method of effecting the same object, i. e. that an agent may execute a paper in his own name for his principal.

But the whole clause used at the commencement of this contract and the words following Fletcher's signature are simply *descriptio personarum*, and do not show that the agents acted *for* the company. The seal was the agent's seal. Ang. and A. on Corp. § 217; 19 Johns. 65; 30 Barb. 218; 4 Mass. 597; 7 Cranch, 304; 4 Wend. 285.

Another fatal defect to this contract is that it was signed by but one of the joint agents.

A delegated authority cannot be executed by one of two joint agents. Story on Agency, § 42; 6 Pick. 198; 2 Pick. 345; 21 Conn. 635; 18 Conn. 197; 57 Ill. 180; 53 N. Y. 342; Dunlap's Paley on Agency, 177.

If the agents were partners then the firm name should be used and sealed instruments must be executed by both. One cannot bind the firm in a sealed instrument in his name alone. 12 Gray, 38; 109 Mass. 73; 6 Gray, 204; 11 Pick. 405; 4 Met. 548. No more could a member of a firm of agents bind the principal.

PETERS, J. In *Nobleboro'* v. *Clark*, 68 Maine, 87, LIBBEY, J., upon an extensive examination of the authorities, lays down this rule : "Applying the principles settled by the courts and the provisions of our statutes to the question under consideration; we think the true rule in this State is, that where a deed is executed by an agent or attorney, with authority therefor, and it appears by the deed that it was the intention of the parties to bind the principal or constituent, that it should be his deed and not that of the agent or attorney, — it must be regarded as the deed of the principal or constituent, though signed by the agent or attorney in his own name. In determining the meaning of the parties, recourse must be had to the whole instrument— the granting part, the covenants, the attestation clause, the sealing and acknowledgment, as well as the manner of signing. If signed by the agent in his own name, it must appear by the deed that he did so for his principal. This may appear in the body of the deed as well as immediately after the signature."

It is our belief that the persons concerned in drafting the instrument before us, intended that the defendants should be bound by it. We think that the instrument taken as a whole is appropriate for that purpose. The names of the principals are disclosed. The persons acting for them are denominated superintendents, implying an agency on their part. The business to be performed by the plaintiff is for the company and not for the agents of the company. The plaintiff is to receive his instructions from and make his reports to the company. His compensation comes from the company.

"The said party of the first part appoints the said party of the second part its general agent." Does this mean that the plaintiff was to be an agent of the company, or merely an agent of the agents of the company? The plaintiff "agrees to use due diligence in advancing the business and prosecuting the best interests of said company."

The compensation for his services, "to be rendered to said company," is to be one thousand dollars per annum. He has "a commission upon all premiums paid to and received by said company" upon policies obtained by him. He is to keep regular and accurate accounts for the company, and "all monies received by him while or as the *agent of said company*," "shall be received and held as a fiduciary trust for said company." He cannot "assign this contract . . . without the written consent of the said company." "The said company reserves" to itself certain rights in case the plaintiff does not occupy all the territory his undertaking covers. The company furnishes printed matter to the plaintiff, and pays some of his expenses, "but no other expenses, unless specially authorized in writing, shall be chargeable to or payable by said company."

"The said parties" have set their hands and seals. The only parties named as being concerned in the different provisions of the agreement have been the plaintiff and the company. The only company named or alluded to is the insurance company. "The party of the first part" and "the company" seem to be identical.

The agreement purports to be made "between Fletcher and Bonney, superintendents of New England Agencies for the Security Life Insurance and Annuity Company," and the plaintiff. The plaintiff contends that the meaning is, that Fletcher and Bonney "for" the insurance company enter into the contract. The defendants render it as merely describing themselves as superintendents "for" the New England agencies "of" the insurance company. The words alone could be construed either way. But with the aid of the light that is shed upon this part of the contract from its other parts, we think it may well be supposed that both ideas are involved in the expression, and that Fletcher and

Bonney meant to say that they were the agents of and were also contracting for the insurance company.

Another point is made. The agreement is signed and sealed by only one of the agents named, and this is not regarded by the defendants as a sufficient execution, to make the instrument a valid agreement of the company under seal. That depends upon the nature of the power conferred upon the agents by the company. If the power was a joint and several one, it could be executed by one or both. Story on Agen. § 42, and cases. It is enough upon demurrer that the execution could be valid. The allegation, which the demurrer admits, is that the defendants did make and execute the agreement. The point is one of evidence and not of pleading. Possibly, too, some principle of ratification or estoppel may apply to the execution of the agreement.

*Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.